# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| In Re: LESTER L. LEE<br>     Debtor, Case No. 12-90007-JKC-7A, | )<br>)<br>) |
| LESTER LEE, | )<br>) |
|                              Appellant, | )<br>) |
|                            v. | )   Case No. 4:13-cv-00087-TWP-WGH<br>) |
| MICHAEL WALRO, Trustee, | )<br>) |
|                              Appellee. | ) |

## ENTRY ON BANKRUPTCY APPEAL

This matter is before the Court on an interlocutory appeal from a Chapter 7 Bankruptcy ruling filed by Appellant Lester Lee ("Debtor" or "Mr. Lee") under 28 U.S.C. § 158 and Bankruptcy Rule 8003. Leave to appeal was properly sought by Mr. Lee on June 27, 2013, and this Court granted the requested leave on October 2, 2013. This is an appeal from an order of the United States Bankruptcy Court for the Southern District of Indiana ("Bankruptcy Court") granting Trustee Michael Walro's ("the Trustee") motion for turnover of the Joint Tax Refund belonging to Mr. Lee and his non-bankruptcy filing spouse, Brenda Lee ("Non-Debtor" or "Mrs. Lee") (collectively, "the Lees"). The sole issue for review on appeal is whether the Bankruptcy Court applied the proper legal standard for allocating ownership interests in a joint tax refund issued to the Debtor and Non-Debtor for purposes of determining how much of the refund should be included in the Debtor's bankruptcy estate. For the reasons set forth below, the decision of the Bankruptcy Court is **REVERSED and REMANDED**.

## I. BACKGROUND

On January 3, 2012, Mr. Lee filed an individual petition for Chapter 7 Bankruptcy. On October 1, 2012, the Lees filed a Joint Federal Tax Return for the tax year 2011, as well as a Joint Indiana State Tax Return for the 2011 tax year (the "Returns"). Together, the couple was scheduled to receive a $25,000.00 federal tax refund for overpayment of estimated tax liability ("Joint Federal Tax Refund"). With the combined State Tax Refund, the Lees received a total refund of $30,751.00 for the tax year 2011 (the "Refund"). On February 14, 2013, the Trustee filed a Motion for Turnover seeking an order for Mr. Lee to turn over one half of the Joint Federal Tax Refund and one half of the Joint State Tax Refund for a total of $15,375.50. Thereafter, on February 25, 2013, Mr. Lee filed his Objection to the Trustee's Motion, submitting calculations from his Certified Public Accountant James D. Kienhoop ("Mr. Keinhoop") showing that had the Lees filed individually, Mr. Lee would have incurred a $51,744.00 federal tax liability, and Mrs. Lee would have received a $38,774.00 federal tax refund. He also submitted a letter from Mr. Kienhoop explaining that the entire tax refund was attributable solely to Mrs. Lee's overpayment of her estimated tax liability. The parties then submitted a Joint Stipulation of Evidence Relating to Trustee's Motion for Turnover of Tax Refund and Debtor's Objection Thereto (Dkt. 11). The matter was argued to the Bankruptcy Court on April 4, 4013.

During the hearing, the Bankruptcy Court stated that it was aware of three different lines of cases regarding the issue of joint tax refund turnover. The Bankruptcy Court cited its own prior decision in applying the "minority approach" or "50/50 rule" by equally dividing the refund between the debtor and non-debtor, and indicated reluctance to consider a different approach. On April 25, 2013, the Bankruptcy Court issued an Order Approving Trustee's Motion for

Turnover (Dkt. 10-4) and awarded the Trustee a turnover of $14,588.00 from Mr. Lee, referring only to this amount as being Mr. Lee's "pro-rata share" and to "Debtor's portion (50%)."[1] It is undisputed that the Bankruptcy Court applied the 50/50 rule advocated by the Trustee; however, the Bankruptcy Court did not explain its reasoning for applying this rule in its order. Dkt. 10-4. At the hearing, however, the Bankruptcy Court expressed preference for the minority approach because it is a "bright-line rule." Dkt. 12 at 5 (under seal). On May 9, 2013, Mr. Lee filed his Motion for Leave to Appeal with the bankruptcy clerk, which was transmitted to this Court on June 25, 2013.

## II. BANKRUPTCY APPEAL STANDARD

This Court has jurisdiction of this appeal under 28 U.S.C. § 158(a), which grants the district court jurisdiction to hear appeals from final judgments and orders, as well as from interlocutory orders of the bankruptcy court. "When a party appeals a bankruptcy court's decision under 28 U.S.C. § 158(a), district courts review a bankruptcy court's factual findings for clear error, and legal conclusions and the legal significance accorded to facts *de novo*." *In re Brown*, 444 B.R. 173, 175 (S.D. Ind. 2011) (citing *Ojeda v. Goldberg,* 599 F.3d 712, 716 (7th Cir. 2010); *Matter of Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995)). *De novo* review requires an independent examination of the applicable law without deference to the bankruptcy court's conclusions. *Id.*

## III. DISCUSSION

The sole issue on appeal in this case is the appropriate legal standard to be applied in allocating the Refund resulting from jointly filed tax returns as between the Debtor and the Non-Debtor. Being that this is purely a matter of law and the parties have stipulated to the pertinent

---

[1] The Bankruptcy Court arrived at this figure by subtracting Mr. Lee's portion (50%) of the amount paid to prepare the 2011 Returns. Dkt. 10-4.

facts, the Court reviews the Bankruptcy Court's ruling *de novo*. Under the United States Bankruptcy Code, the property of a debtor's estate includes "all legal or equitable interest of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). "Although § 541 defines 'property of the estate', state law defines the nature and extent of those property interests." *In re Hill*, No. 11-10213-AJM-7, 2012 WL 5199171, at * 1 (Bankr. S.D. Ind. Oct. 22, 2012) (quoting *Butner v. U.S.*, 440 U.S. 48 (1979)). Refunds from jointly-filed returns present unique issues when only one of the spouses files bankruptcy. *Id.* Moreover, there has been no Seventh Circuit case law addressing the nature of each spouse's individual interest in a joint tax refund outside the context of a marriage dissolution proceeding. *Id*.

**A.     Methods of Allocating Joint Tax Refunds in Bankruptcy**

There is a split of authority with respect to the appropriate method for allocating joint tax refunds between a debtor and a non-bankruptcy filing spouse for purposes of determining what funds may be included in the bankruptcy estate, and there are at least three different lines of cases regarding this issue. The split of authority exists not just between various circuits or districts, but even within this district. The "minority approach," employed by the Bankruptcy Court below, is to apportion the right to the refund equally, regardless of which spouse earned the income, paid withholdings, or caused any exemptions or credits to apply (hereinafter, the "50/50 Approach"). *See generally In re Page*, No. 10-10728-JKC-7A, 2012 WL 174293 (Bankr. S.D. Ind. Jan. 10, 2012); *In re Smith*, No. 09-7276-BHL-7A, 2011 WL 345865 (Bankr. S.D. Ind. Feb. 2, 2011). The 50/50 Approach uses an allocation method based upon domestic dissolution law and presumes that spouses share equal ownership in a tax refund, which may be rebutted only by evidence of a domestic relations court order or an enforceable, written pre-petition contract between the spouses designating alternative ownership of the refund. *Smith*, 2011 WL

345865, at *2; *see also* Ind. Code § 31-15-7-5 (Rebuttable presumption that an equal division of marital property between the parties is just and reasonable). The rationale for the rule is that it provides a "bright-line rule which is easy to understand and apply," and because a debtor spouse is jointly responsible and liable for a joint federal income tax deficiency, so should he or she "share in the good fortune of a tax refund." *Smith*, 2011 WL 345865, at *2.

Alternatively, the majority of courts utilize calculations that split joint tax refunds proportionately. One such approach to allocating the ownership of joint tax refunds holds that a joint refund should be allocated between spouses based upon the individuals' respective tax withholdings during the taxable year. *Id.* at *1. As such, a non-debtor spouse who had no tax withholdings during the relevant taxable year is not entitled to any portion of the tax refund, with the rationale that one who pays no taxes is not entitled to a refund. *Id.*; *see also In re Kelinfeldt*, 287 B.R. 291 (10th Cir. B.A.P. 2002); *In re Gleason*, 193 B.R. 387 (Bankr. D.N.H. 1996).

A third approach, known as the Separate Filings Rule or Internal Revenue Service Formula, requires a determination of what each spouse's contributions and tax liabilities would have been if filed separately, and applies that proportion to the joint tax refund resulting from filing the joint return. *See In re Crowson*, 431 B.R. 484, 491-96 (10th Cir. B.A.P. 2010). The Separate Filings Rule or Internal Revenue Service Formula apportions the refund between spouses based upon their respective tax liability and contributions, which may also allocate credit for nonfinancial contributions in the nature of tax credits. *Id.*

As mentioned earlier, here, the Bankruptcy court elected to use the 50/50 allocation and the Court's analysis will begin with this approach.

**B.     The 50/50 Approach**

The Trustee has offered several arguments as to why the 50/50 Approach should be

5

applied in this case and in the Southern District of Indiana in general.  First, the Trustee argues that because Mr. Lee, by filing the joint Returns, would have been jointly and severally liable for any tax deficiency arising from the Returns, even if such deficiency was solely due to Mrs. Lee's income, he should have a corresponding joint interest in the Refund.  *See* 26 U.S.C. § 6013(d)(3) ("[I]f a joint return is made, tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.").  Although this rationale has been used by other courts in deciding this issue, *see Smith*, 2011 WL 345865, at * 2; *In re Aldrich*, 250 B.R. 907, 913 (Bankr. W.D. Tenn. 2000), the Trustee fails to explain how joint and several liability translates to equal 50% ownership of a tax refund.  Joint and several liability means only that the obligee—in this case, the IRS—may pursue satisfaction of the entire obligation from either or both of the obligors.  However, the doctrine of joint and several liability also provides that "a paying party may have a right of contribution and indemnity from nonpaying parties." Black's Law Dictionary (9th ed. 2009), liability.  Thus, joint and several liability does not necessarily translate to equal responsibility, and by extension, equal ownership, and is therefore not a solid justification for presuming a 50/50 split of a tax refund between joint filers.

Another argument advanced by the Trustee for the application of the 50/50 Approach is that Indiana law treats property acquired during a marriage as joint property, and there is no state law requiring tax refunds to be treated as anything other than joint property.  This argument applies the presumption of equal division of marital property between parties in a dissolution proceeding.  *See* I.C. § 31-15-7-5.  However, this approach ignores the differing policies underlying domestic relations laws and bankruptcy laws.  First, it must be noted that Indiana is not a community property state; rather, it is an equitable distribution state that seeks to divide marital property in a manner that is "just and reasonable."  I.C. § 31-15-7-5; *see also In re*

6

*Haynes*, 157 B.R. 646, 649-50 (Bankr. S.D. Ind. 1992). The equal division of property in marriage dissolution is a rebuttable presumption, and the courts must take other equitable factors into account to arrive at a just and reasonable result. Indeed, there are many factors that go into determining the allocation of marital assets upon dissolution that are irrelevant in the bankruptcy context, such as the economic circumstances of each spouse at the time of the disposition of property, the conduct of the parties during the marriage as related to the disposition of the property, and the earnings or earning ability of the parties. I.C. § 31-15-7-5(3)-(5). Further, the objective of a dissolution action is to equalize the division of property according to the spouses' individual needs and means of support. *See Hill*, 2012 WL 5199171, at *2. In contrast, the purpose of a bankruptcy proceeding is to determine what assets a debtor owns that can be distributed to creditors, regardless of the economic status of the non-debtor spouse or any other equitable considerations. *Id.* at *2 ("The objective of a bankruptcy proceeding . . . is to determine a debtor's property interests and how to distribute them to creditors. The non-filing spouse's greater need for the debtor's property in order to achieve an equitable equalization is irrelevant in a bankruptcy proceeding.").

Even within the context of Indiana domestic relations law, a party may present relevant evidence of "[t]he contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing." in determining how marital property should be divided. I.C. § 31-15-7-5(1). Regardless of this and other courts' conclusions that marital dissolution law is inapposite to bankruptcy law based upon their differing objectives, applying a presumption of equal division of property while not permitting the debtor and non-debtor spouse to rebut that presumption by showing each spouse's contribution to the acquisition of that property, in the absence of a prepetition agreement, is incongruous even with Indiana's

7

dissolution laws. Therefore, the Court concludes that the application of marital dissolution laws and principles is not a sufficient rationale for the imposition of the 50/50 Approach in bankruptcy cases.

The rationale of some courts for applying the 50/50 Approach also mischaracterizes the nature of tax refunds. While the *Smith* court characterized a tax refund as a "good fortune," in reality a tax refund is just that—a refund of overpayment of tax liability by the taxpayer that the IRS is required by law to return to the taxpayer. *See* 26 U.S.C. § 6402(a) ("In the case of any overpayment, the [government] . . . may credit the amount of such overpayment, . . . against any liability . . . on the part of the person who made the overpayment and shall . . . refund any balance to such person."). A tax refund is the amount a person is legally entitled to, based upon withholdings, payments and credits, not a windfall to its recipient. However, to apply the 50/50 Approach to a situation, for example, where one spouse made no contributions may result in a windfall to either the non-debtor spouse who made no contributions, or to the creditors of a debtor who made no contributions. *See In re Gleason*, 193 B.R. 387, 388-89 (Bankr. D.N.H. 1996) ("It seems incongruous at best to find that the non-debtor spouse is entitled to a cash refund having paid no taxes.")

While the 50/50 Approach is a "bright line rule" that is easy to calculate and apply, and would certainly place less burden on the courts and trustees, this fact alone is not a sufficient justification for not adopting a more comprehensive approach that takes into consideration what each spouse actually contributed to arrive at the refund amount. *See Crowson*, 431 B.R. at 496 ("[S]implicity cannot come at the expense of the debtor's non-filing spouse."). Application of the 50/50 Approach in this case would deprive Mrs. Lee of her separate property interest in the tax refund and what she is otherwise legally entitled to under the tax code. It is also contrary to

Indiana state law, which recognizes that there can be unequal ownership of property between spouses based upon their respective contributions in acquiring the property. I.C. § 31-15-7-5(1); *see also* I.C. 31-11-7-2 ("A married woman has the same rights concerning real and personal property that an unmarried woman has."); I.C. § 32-17-11-29 (personal property owned by two or more persons is owned by them as tenants in common); *Allstate Ins. v. Boles*, 587 F. Supp. 807, 813 (S.D. Ind. 1984) (Indiana law recognizes spouses as independent individuals that may hold and convey property the same as if they were unmarried).

Therefore, the Court concludes that the 50/50 Approach is not the proper legal standard for determining a debtor's and non-debtor spouse's ownership interest in a joint tax refund for purposes of 11 U.S.C. § 541.

**C.     The Separate Filings Rule/Internal Revenue Service Formula**

The Separate Filings Rule advocated by the Debtor is a legally sound approach to allocating joint tax refunds in bankruptcy when only one spouse has filed for bankruptcy relief. While the Bankruptcy Court below followed the 2011 opinion of Judge Lorch in *Smith*, a subsequent decision by Judge Metz in *Hill* took the opposite viewpoint and applied the Separate Filings Rule, also referred to as the Internal Revenue Service Formula, set forth by the Tenth Circuit in *Crowson*. *Hill*, 2012 WL 5199171, at * 3. "The Internal Revenue Service Formula 'is a blended approach that considers both income and withholdings by calculating a spouse's individual refund by subtracting a spouse's individual liability, determined in accordance with the married filing separate formula, from the spouse's contribution toward the joint liability.'" *Id.* (quoting *In re Palmer*, 449 B.R. 621, 626 (Bankr. D. Mont. 2011)).

The Internal Revenue Service Formula is derived from IRS Revenue Rulings and IRS manual provisions that pertain to allocating overpayments between taxpayers who file joint

9

returns. Specifically, the formula is based on IRS Revenue Ruling 74-611 which states that when a husband and wife file a joint return, each spouse has a separate interest in the jointly reported income and a separate interest in overpayment, and Ruling 80-7, which applies the principles of Ruling 74-611 in the context of determining what portion of a married couple's current-year joint income tax refund the IRS may retain and offset against one spouse's prior-year individual tax liability.[2] *Crowson*, 431 B.R. at 491. Rather than just focusing on each spouse's withholdings to determine their respective share of a joint tax refund, the Internal Revenue Service Formula takes into account "the respective spouses' withholdings, income and contributions as a whole instead of focusing on one of those factors." *Hill*, 2012 WL 5199171, at *3. This more comprehensive approach also factors in tax credits that may be attributable to each spouse under the tax code, such as Earned Income Credit and the Additional Child Tax Credit. *Crowson*, 431 B.R. at 491-95. While these particular credits are not applicable to the Lees specifically, it is important to use a methodology that accounts for not only withholdings and estimated tax payments, but any other credit that may increase the amount refunded to the tax return filers.

The court in *Hill* adopted the formula articulated by the Tenth Circuit in *Crowson*, and this Court also finds it to be a sound approach. The specific formula is set forth in detail over five pages in the Tenth Circuit's opinion in *Crowson* that need not be repeated in explicit detail here. 431 B.R. at 491-96. In summary, the first step of the formula is to determine each spouse's contribution to the "total payments," including withholdings, estimated payments, and credits. *Id.* at 491. This is done by calculating each spouse's contribution to each type of

---

[2] The formula also incorporates principles from Ruling 87-52 in which the IRS directs that each spouse's contribution to the "payment" represented by the Earned Income Credit is determined by calculating the amount of EIC each spouse would theoretically be entitled to claim as a "payment" if he or she filed a separate return. Because both Mr. Lee's and Mrs. Lee's income exceed the threshold for EIC to apply, this type of contribution is not a factor in this case.

payment, and then adding those contributions together to arrive at a total contribution figure for each spouse. *Id.* When both spouses' contributions are added together, the sum should equal the amount in the "total payments" line on the joint tax return. *Id.* at 492. To determine to what extent each spouse's contribution should be applied against the joint tax liability, each spouse must calculate what tax liability he or she would have incurred on his or her separate income by calculating each spouse's "married filing separately" tax liability. *Id.* Each party's "married filing separate" liability is then divided by the sum of both parties' "married filing separate" liabilities, resulting in the percentage of the joint tax liability that is allocated to each spouse. *Id.* The party's share of the joint tax liability is then subtracted from the sum of all his or her contributions to the "total payments," resulting in a figure that represents the party's share of the joint tax refund. *Id.* The court in *Crowson* cautioned that these rules will not apply in all cases, and "ultimately it falls to the parties to present evidence of these calculations when bearing their respective burdens of persuasion." *Id.* at 496.

Here, the parties have already completed the initial task necessary for this assessment, which is to create hypothetical "married filing separate" tax returns, the results of which are summarized at Dkt. 11 at 91.[3] As applied to the stipulated facts of this case, the Internal Revenue Service Formula results in the joint tax liability being 100% allocated to Mr. Lee, which is $15,848.00. Subtracting Mr. Lee's total contributions, which add up to $2,074.00, leaves a deficit, or underpayment, of $13,774.00. With regard to Mrs. Lee, her percentage of liability for the joint tax obligation is zero, resulting in a $38,774.00 surplus, or overpayment. Adding the deficit of $13,774.00 to the overpayment of $38,774.00 yields the $25,000.00 federal refund at issue. In this particular case, it is readily apparent that the federal tax refund is the

---

[3] Only a summary of the federal pro forma MFS tax returns was provided; the same calculation must also be done for the state returns.

result of overpayment by Mrs. Lee, as she was not responsible for any of the tax liability based upon her reported income and was the only party who had a surplus of withholdings. Thus, under the stipulated facts, Mrs. Lee would be entitled to 100% of the refund of her overpayment of taxes under the Internal Revenue Service Formula.

The Trustee raises a factual issue regarding whether wage earnings and corporate losses on the Returns were actually attributable to Mrs. Lee, and argues that evidence of such was not presented because the parties were proceeding under the 50/50 Approach. Such inquiry is not before this Court on appeal. However, the Trustee requests an evidentiary hearing before the Bankruptcy Court to determine the amount of income, losses, and tax liability attributable to each spouse. It should be noted that the burden is on the Trustee in a turnover proceeding to prove by a preponderance of the evidence that the property sought is in fact property of the bankruptcy estate. *Crowson*, 431 B.R. at 489 (citing *In re Spencer*, 362 B.R. 489, 490 (Bankr. D. Kan. 2006)). Whether the Trustee finds it prudent to prepare and present evidence that Mr. Lee is entitled to a greater share of the joint tax refund due to alleged fraudulent information reported on the Returns, and whether Mr. Lee believes it is economically feasible to defend his position, are decisions that must be made by the respective parties based upon the circumstances. *See Id.* at 496. Nevertheless, in light of the different legal standard applicable to joint tax refund allocations, as determined by this Court, the Bankruptcy Court should hold an evidentiary hearing to determine these issues should the parties decide that the calculations contained in the stipulated facts for purposes of the Trustee's motion are inaccurate, and give the parties the opportunity to re-present their arguments before the Bankruptcy Court under the Internal Revenue Service Formula or Separate Filings Rule.

In reaching this decision, the Court agrees with Judge Metz direction given in *Hill*, that the debtor should be responsible for preparing a pro forma tax return under the hypothetical "married filing separately" status and then submit that return to the Trustee within a designated time. Thereafter the Trustee may either: (1) file a written objection with the Court if he objects to the calculations or the methodology used in the "married filing separately" return or (2) either amend or withdraw his motion for turnover as it related to the joint tax refund. See *Hill* at *3.

As a final note, the Court recognizes the Trustees concern that the "precedential impact" of adopting the Separate Filings Approach would cause the "workload of bankruptcy trustees to increase exponentially," and in the vast majority of cases, "the time and expense would be wholly disproportionate to the amount of refund at issue." Dkt. 14 at 15. The Court reiterates that the Separate Filings Approach may not be appropriate in all cases. As indicated in *Crowson*, whether a trustee should undertake this analysis is a "business decision" and whether a debtor or non-debtor spouse should incur the expense of mounting a defense to such an effort "is best decided case-by-case, in the prudent exercise of the parties business judgment in the context of the economies of the particular matter." See *Crowson*, 431 B.R. at 496.

After wading through the somewhat murky state of the law, the Court concludes that the Internal Revenue Service Formula or Separate Filings Rule, should be applied to determine the Debtor's and Non-Debtor's respective ownership interests in the Joint Tax Refund.

### IV.  CONCLUSION

With all due respect, for the reasons set forth above, the Bankruptcy Court's decision on the Trustee's Motion for Turnover of Tax Refund is **REVERSED** and this matter is **REMANDED** to the Bankruptcy Court for additional proceedings consistent with this opinion.

The Bankruptcy Court shall provide the parties with an evidentiary hearing and opportunity to argue their positions under the legal standards as set forth in this entry.

**SO ORDERED.**

Date: 03/31/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

R. Patrick Magrath
ALCORN GOERING & SAGE
magrath@agslawyers.com

Wilmer E. Goering, II
ALCORN GOERING & SAGE
goering@agslawyers.com

Joseph L. Mulvey
RUBIN & LEVIN, PC
jmulvey@rubin-levin.net